## STATE v. ALLEN CARTER.

*Indictment—Murder.*

Words, however grievous, are not sufficient provocation to reduce the crime of murder to manslaughter.

*State* v. *Tackett*, 1 Hawks, 210; *State v*, Hill, 4 D. & B. 491; *State* v, *Barfield*, 8 Ire. 344, and *State* v, *Howell*, 9 Ire. 485, cited and approved.

This was an INDICTMENT against Allen Carter for the murder of Bushrod W. Lilly, removed from Stanly county, and tried before *Furches, J.*, at Fall Term, 1876, of RICHMOND Superior Court.

The State proved, among other things, that about three months before the homicide, the prisoner said, in the absence of the deceased, that he would kill him for talking about him; that on the occasion of the homicide, the prisoner came to the house of the deceased, and after the usual salutations, said, " I understand you accuse my boys of killing a hog." The deceased replied that he did, and " gave his reasons." Thereupon prisoner stated that if he thought the deceased believed it, he would kill him and raised his gun and shot at him. The deceased then remarked, " Your gun had no load in it," when the prisoner drew his bowie knife, which resembled those " the soldiers had made at the commencement of the war—home-made," and ran towards the deceased, who retreated. The prisoner pursued him and caught, stabbed and killed him. The State also proved that there was a bullet hole in the door of a barn, near which the deceased was standing, when the gun was fired at him. The defendant introduced no testimony.

In the argument, the prisoner's counsel insisted, " that he had legal provocation to commit the act, and therefore should

be acquitted entirely, and that, at most, it could not be more than manslaughter."

The State took the position that there was no legal provocation and that the crime was murder, and so asked the Court to charge.

His Honor then charged the jury as follows: "It is for you to determine whether the prisoner killed B. W. Lilly or not; and if he did, in what manner and under what circumstances, so as to enable you to determine whether he is guilty or not, and if guilty, of what offence. To determine that, you will find the facts from the evidence, and apply them to the law as given you by the Court That if it appeared from the evidence that the prisoner killed Lilly with a deadly weapon, and nothing further appearing, the law would presume malice and he would be guilty of murder. That when such killing was shown, it then devolved upon the prisoner to show the facts and circumstances to excuse him for such killing, or to mitigate or reduce it to manslaughter; unless such facts and circumstances of excuse or mitigation appeared from the testimony introduced by the State. That if the description of the knife, used by the prisoner in committing the homicide, was true, it was a deadly weapon.

Therefore to excuse the prisoner for such killing and entitle him to a verdict of not guilty, it must appear that he did it in self-defence and to prevent the deceased from killing him, or from doing him some great bodily harm. To extenuate and reduce it to manslaughter, it must appear that the prisoner and the deceased were in an affray, or that the deceased had committed an assault upon the prisoner, before he inflicted the mortal wound upon the deceased; that words alone, however grievous, would not excuse, nor would they extenuate and reduce the crime to manslaughter. That if the testimony of the two Lillys, the only witnesses of the transaction, was a true photograph of the transaction, it was

a case of murder. Though, the jury are the triers of the facts, and in doing this, they should not only take into consideration what the witnesses said, but their characters, their demeanor upon the stand, their opportunity to know the truth of what they said, and their ability to understand and remember them correctly; and that they must be satisfied of the prisoner's guilt beyond a reasonable doubt."

The prisoner's exceptions to the charge are sufficiently stated in the opinion of this Court.

Verdict of guilty. Rule for new trial, rule discharged. Motion in arrest, overruled. Judgment. Appeal by defendant.

*Attorney General* for the State.
No counsel for defendant.

READE, J. There was evidence tending to show, that the deceased had, a considerable time before the homicide, been talking about the sons of the prisoner; charging that they killed a hog, (whether it amounted to a charge of larceny does not appear,) and that the prisoner, in the absence of the deceased, had said that he would kill him if he did not quit talking about it. If that testimony was true, then there was *express* malice; and it would be a clear case of murder. But leave out that feature of the case, and then the facts are, that the prisoner went near the house of the deceased and asked the deceased, whether he had said that his sons had killed the hog? And upon the deceased admitting that he had, the prisoner shot at him with his gun. Failing to hit him, the prisoner ran at him and after him, (the deceased fleeing,) until he caught him and stabbed him several times with a knife, and killed him. The only provocation given the prisoner was the admission of the deceased, that he had said, that the prisoner's sons had killed the hog. The only question necessary to consider is, whether that

provocation was sufficient to mitigate the homicide to man-slaughter?

1. The rule is, that words are not, but blows are, a sufficient provocation to lessen the crime of homicide to manslaughter. *State v. Tackett*, 1 Hawks 210. *State v. Hill*, 4 Dev. & Bat. 491. *State v. Barfield*, 8 Ire. 344. *State v. Howell*, 9 Ire. 485. His Honor held that the provocation did not mitigate the killing to manslaugter. And in this he is sustained by all of the authorities.

2. The prisoner objected that His Honor did not advert to the distinction "between those weapons which are gener-ally used as means of offence, without any positive deadly purpose and those always used with an intent to kill." Whatever force there may be in that distinction, it is not in favor of the prisoner, but is against him; for the weapons which he used were, first a loaded gun which he discharged at the deceased, and secondly, a home-made bowie-knife, such as the soldiers had made when they were going to the war. The peculiar office of both of these weapons is *to kill*.

3. Again the prisoner objected, that His Honor did not advert to the exception to the rule, that malice is implied from the use of a deadly weapon, "involved in the *manner* in which the weapon is used and the blow given."

There is nothing in such exception in favor of the prison-er; for the *manner* of using the gun was, to discharge it at the deceased in carrying distance; and the *manner* of using the knife was, to strike with all his force, stabbing the deceased repeatedly and one time driving the knife clear through the body.

There is no error in the record to sustain the motion in arrest of judgment.

There is no error. This wlll be certified &c.

PER CURIAM.                                    Judgment affirmed.